Thank you. And we'll turn to our last oral argument of the day. And that case is 24-4039 North Brevard County Hospital District v. C.R. Bard. Good morning, your honors. If it pleases the court, I'm Stephen Berry, representing appellant, plaintiff, North Brevard County Hospital District, doing business at Parrish Medical Center. Parrish would show the court as follows. This court has jurisdiction to review the tying final judgment on the merits merged with class interlocutory findings prior to the, that is, now before the court. Second, the district court erred in dismissing the tying claim by misinterpreting Dictum and Abram and sports racing. Secondly, this court has never created an enforcement gap by holding that purchasers suffering antitrust price injury by purchasing the monopolized tied product. Here, PICS lacks standing to assert a tying claim. Third, as to the jurisdictionally merged class interlocutory findings, the district court pervasively erred by failing to follow the Supreme Court and this court's unequivocal and well-established direction in Tyson's Foods, Black v. Occidental Petroleum, NRA, Urethane Antitrust, and Monaco. It's a trifecta plus one of error we believe respectfully submit. I note here that we contend that its typicality, adequacy of representation, and predominance findings should be reversed. And, since the district court accepted Parrish's other prerequisite showings, to expedite resolution of this matter, first filed five years ago in 2020, with a total statute of limitations period now at nine years, Parrish respectfully petitions that I mandate issue directing the district court to certify damage in adjunctive classes so the parties may proceed to trial on the merits. Jurisdiction. This court has jurisdiction. Excuse me. Let me try to understand your claims a little better. Is there any difference in proof between your tying claim and your monopolization claim? Is it your tying claim that because of the tied product, the defendant has monopoly power and that's causing the price of the catheters you want to be raised? Yes. How is that different from your monopoly claim? It isn't. It isn't? In the district. So what's so terrible about saying you shouldn't be the one bringing the tying claim? Because I can bring the monopolization claim. Well, it really amounts to a monopoly claim. It's kind of what I think our opinion in sports, whatever, was saying, that they're not the best person to bring the tying claim, but they have a monopoly claim. Wasn't that the same situation there? Well, I would disagree. The talisman in antitrust jurors' canon across the board is, if a party suffers direct antitrust price injury, it has standing. Full stop. There's no enforcement gap that the court is manufacturing here by relying on dictum. This court has... It's not an enforcement gap, is what you're saying, because you can proceed with your monopolization claim. Well, it's a tying enforcement gap. OK. I mean, it shouldn't depend on whether monopolization is on the four corners the same as tying. But it does mean that's really the essence of your claim, is the monopolization aspect. You're not buying the tying product. I'm going to get that wrong in every question I ask. You're not... You don't want the tying product. And usually for a tying claim, and virtually every case that has a tying claim apparently has this situation, you don't want to spend too much money on the tied product. That should be competitive. But to get the tying product, you have to buy the tied product. That's not precisely what your problem is. Your problem is that because other people are stuck that way, it gives monopoly power to BARD. And that's the gist of your claim, the monopoly power. Yes. And in the relevant product market for PICS, there's monopoly power, and it's caused by the tie. And that sounds both in tying and monopolization. And for the court to find that tying is off the board, we believe is inappropriate. This court has never held that purchasers suffering antitrust price injury by purchasing the monopolized tied product here at PICS lack standing to assert a tying claim. The court has never... All the district court did, saying, by the way, I would decide this differently if I wasn't bound by sports racing and Abram dictum, which we consider as dictum, he didn't. Yeah, but counsel, the Abraham decision was looking at the direct purchasing rule based upon the definition of tying arrangements that came from the Supreme Court. And so whether ultimately how the Supreme Court has defined this sort of tying arrangement as dictum, but that's binding on us. And I mean, couldn't a reasonable argument be made that Abraham, even if it in applying that dictum, did establish this direct purchasing rule? That, and you said a moment ago, the court or anyone who suffered antitrust injury has standing full stop. But I mean, I don't think it's that clear. I mean, what we're talking about here is how to apply Abraham. And would you acknowledge at least the dictum doesn't go your way? Well, Abraham doesn't get the district court where it wanted to be because it did not address the question of whether the purchaser of the tied product has standing. The plaintiff hadn't even bought the relevant tied product in Abraham. So it can't be quoted as part of the holding. But it expressed its intention and its desire to do so, which is absent here. Isn't that the gap? In Abraham, the plaintiff said, well, we suffered injury because we want to purchase this tied product. But based upon the antitrust injuries we've been suffering, we would have to pay higher prices. Therefore, we have standing. Here, as I understand it, Parrish is saying, well, we don't want to buy the tied product. However, our injury is that the price of the product we do want to purchase has been elevated. So isn't this case easily distinguishable from Abraham in that regard? Yes, it is. Therefore, this in a way that's not helpful for you. Well, I think it is helpful. Therefore, this case should go forward. And you can't say that there's stare decisis on Abraham on this point, because it wasn't part of the holding. And it's basically, the court, enough. There are a lot of things in this case. You said that you should prevail in the tying claim, because if you have an antitrust injury, you can proceed. But antitrust injury, as I understand it, maybe I got it wrong, doesn't mean that you're injured by antitrust activity. There's more to it than that. For example, when the wholesaler is the one directly damaged by the antitrust agreement, it's the wholesaler who can bring the claim, not the retailers who suffer injury, even from the antitrust. That's only a brick. So there's this notion that you don't have an antitrust injury just because you're injured by antitrust activity. It's more than that. And in some sense, at least, you don't have an antitrust injury unless you're a good person or the best person to bring the claim. And here, I think the district court understood that to mean that people who buy both the tied project and the tying product are the best people to bring a tying claim. And that's really not so bad for you, because you still have the exact same claim you're going to make, but you just do it under Section 2 instead of Section 1. What's wrong with that? Well, what is wrong with that is that the court is basically pouring out of court, in a tying context, a party that has been injured by direct antitrust price injury due to monopoly power conferred by the tie. It's, it is, you're out of court. And there's no policy reason why that should be. And just referring to some loose language in dictum, that there are two categories of claimants, shouldn't end the analysis. One difference between you and the people who buy both the tying and tied product is you could lose on your tying claim if you can't show monopoly power. And the others don't have to prove monopoly power to prevail on their tying claim. Isn't that correct? No, you have to show that the tie confers monopoly power. You have monopoly power in the tying product. You have to do that, but does a purchaser of the tying and tied product? Yes. Doesn't that person have a, have a claim under, for a tying claim without showing that this tying practice of the defendant actually gives the tying defendant monopoly power? I don't think that's the law. I think that you have to, you have to have monopoly power in the product that's being sued upon, whether it's the tying or tied product. And if there is monopoly power, there's direct antiprice injury. You'd have to show to get to injury that there was monopoly power or market power or whatever you want to call it. So I would respectfully disagree, Your Honor. You're probably right. Let's talk about- Counselor, can I ask you about your Section 2 claim? Help me understand your argument as to why Baker and Anderson Living Trust don't resolve this question. Yes, because Anderson Living Trust is distinguishable on three important grounds. First, Anderson did not address the situations here where the interlocutory rulings are merged with a final judgment on a merits claim here, tying. Second, unlike Anderson, Parrish Hospital is not seeking the Enron Rule 23-F. In fact, Parrish made a timely petition under 23-F. So didn't that happen in the Microsoft case also? Hadn't they pursued 23-F and were rejected? So then they manufactured jurisdiction. OK, well, yes, they were manufacturing jurisdiction. Even though they had been denied on 23-F, they were Enron-ing it. They had two bites of the apple, and the Supreme Court said, no, that's- I have to reserve three minutes of my time. You're going to have time to make your argument, OK? OK. But I thought you said you pursued 23-F in this case. You were denied. Yes, so then you manufactured jurisdiction just like they did in the Microsoft case. Well, under the merger rule, we're not manufacturing jurisdiction. The interlocutory ruling was merged with the merits finding, final judgment on the time. If I could address that for a moment. This merger distinction with Anderson is particularly salient. Under well-settled appellate tenets, litigants may, in the course of appealing a final decision, as here, challenge earlier interlocutory rulings. The merger foundation of this court's jurisdiction is seminal Supreme Court precedent as far back as 1891 in McLeish, 141 U.S. 665. As the court put it, quote, from the very foundation of our judicial system, the object and policy of acts of Congress have been to save the expense and delays of repeated appeals in the same suit and to have the whole matter in controversy decided in a single appeal. That's what we want here. Indeed, the Supreme Court in Baker cited McLeish in hyperbole for that proposition. So it could be argued that that case supports our distinction here that living senate trust does not apply, nor does Microsoft versus Baker, to deny interlocutory consideration under the merger rule of class rulings. In fact, we believe this court more likely or more beneficially looked to its precedent in Crowley Petroleum, which was authored by, Your Honor, Judge Hart, and Schmurrier, in which Judge Hart was on the panel in that case. In Crowley Petroleum, Your Honor, Judge Hart found for the court an order— You're losing the other two judges every time you cite these, so be careful about that. Well, yes, Your Honor, I will be very careful about that. Where the court found that an order voluntarily dismissing a class action was a final decision which fully resolved the matter before the court and was appealable. And that was in 2021, some years after Anderson Living Trust. In Schmur, the court found that dismissal of class claims with prejudice creates finality if there were prior claims adversely dismissed with prejudice. That's what's here. Prior claims adversely dismissed with prejudice, then there's finality, and you can deal with the class rulings. You're going to be able to address all of them, but not with unlimited time, so why don't you turn to one of your other issues that you don't feel you've got a chance to argue. All right, the class issues. Should the court assert jurisdiction? That's it, then. You're out of time, but go ahead and briefly address— I will be brief. Our mission is to help us, and if we think we're still being helped, you're going to be able to talk to us. Well, I'm glad. Hopefully I am helping, Your Honor. Under well-established Supreme Court precedent, Tyson Foods recently relied upon in this circuit in Black v. Occidental, on which Judge—I'm sorry. I'm having a hard time hearing you. Committed pervasive class error across its typicality, adequacy of representation, and predominance findings by ignoring or discrediting plaintiff expert Dr. Miravet and taking issues of the relative persuasiveness of expert class testimony on common impact, et cetera, from the jury. Below, no opinions—I want to emphasize here—below the court did not find under Daubert that the opinions of Judge Dr. Miravet were unreliable or inadmissible. So there's no finding in that regard. As the Supreme Court puts it in Tyson's food, quote, reasonable minds may differ as to the correctness of an expert opinion. Resolving that question, however, is the near exclusive province of the jury, not the chief judge below here. The court in Black v. Occidental Petroleum follows Tyson's in the class context. There, the court rejected the contention that plaintiff's class predominance methodology was incapable of showing class-wide monarchic power. The panel found that this contention, quote, should be properly addressed at trial in a ruling or on a summary judgment of motion. Quote, similarly, a challenge to the persuasiveness of plaintiff's methodology for determining market power is, in general, a matter for the jury. In our brief, we go over how the court did not follow Tyson's and, therefore, should be reversed on adequacy representation, typicality, and predominance. Thank you, Your Honor, for your patience. Are we still getting paid double for coming? I think it's 30 degrees. You have a ruling, don't we, on that? It's got to be below zero for us to get paid double. Good morning, and may it please the court. My name is Brian Quinn. I represent C.R. Barr and Barr to Access Systems in this case. I'm joined at council tables by my colleague, Colleen Powers. Supreme Court and 10th Circuit law controls each of the three questions that are relevant in this appeal. First, can Parrish establish antitrust standing to bring a tying claim when it never purchased and had no interest in purchasing the tying product, unlike thousands of other hospitals? The answer is no. Second, can Parrish use a voluntary dismissal tactic to engineer appellate and subject matter jurisdiction over the adverse class certification decision on its separate monopolization claim? The answer is no. Finally, even if Parrish could use that tactic to obtain jurisdiction, is there any reason to disturb the district court's class certification decision? The answer is no. Now, Your Honor asked earlier, why isn't this case exactly like sports racing? The answer is that this case is exactly like sports racing. The parallels between sports racing in this case are obvious. As here, the plaintiffs in sports racing brought tying claims and related monopolization claims. As here, one of the plaintiffs in sports racing only bought the so-called tied product. In that case, the tied product was cars and parts. In this case, the tied product is standalone picks. And as here, one of the parties in sports racing brought a claim on the basis of the defendant's alleged monopolization of the market for the tied product. Again, cars and parts in that case. District court's decision here followed the contours of sports racing as it applies to purchaser antitrust standing exactly. No antitrust standing to bring a tying claim when you only purchase the tied product. Yes antitrust standing to bring a monopolization claim when you purchase only the tied products and claim the overcharge. So explain that. They're injured. They state their argument that they are injured by the fact that this tying is going on. It's kind of indirect. There are the people who might be better situated. But why? There's not the complication of measuring damages by allowing them to proceed. Why is that? Why is what would clearly Article 3 standing? Why isn't that enough to bring an antitrust claim? Explain the rationale behind that. It's not clear. I think sports racing did a better job than I even could. Well, we may be bound by what it said. That was a fairly brief footnote that you're relying on. Footnote 15, it was. The rationale of that is that for Clayton Act claims, private antitrust claims, we have to pick the right plaintiff. Why? Because the Supreme Court says in associated general contractors that it's a policy matter. It's just not the case that everybody conceivably injured by an antitrust violation can sue. Well, I may be getting my cases mixed up. But I thought the big problem there was duplication of damages. Because you get different people in the purchasing chain and let the person who, you know, the wholesaler, I don't know if that was the situation there, they can get all the damages. Yes, the purchasers from the wholesalers are hurt too. But that's going to duplicate damages. What's the negative result of allowing the sort of claim in this case? Well, what problem arises because they're not the best plaintiff? I think the case you were thinking of, Your Honor, was Illinois Brick. Associated general contractors is the case where the Supreme Court says that even among direct purchasers, the people who are ostensibly proper plaintiffs to sue, you have to assess directness among them. We don't want folks with an indirect injury bringing antitrust claims when the people who are best to bring antitrust claims are those who are directly injured. They have the most interest. They're going to detect the violation a lot more easily than someone who's indirect. They've got the most skin in the game in terms of recovery, a possibility for recovery. And so as a policy matter, we don't want to go beyond the first step. We want to focus on the victim who's injured at the first step. Did the Supreme Court talk about the negative aspects? Maybe these other people are better. But what's wrong with having the case brought by someone who has an indirect injury? I think it was a proximate cause decision, Your Honor. And so it was really a policy decision about, OK, at some point in time, you just get too far from the locus of the harm, from the direct victim, such that we're not going to allow those people to bring antitrust claims under the Clayton Act. They may have a cause of action under state law that provides for indirect purchaser claims. They may have a cause of action elsewhere. But for purposes of federal antitrust policy, we're going to focus on the direct victim and exclude indirect victims from the ambit of the remedy. They really don't say what the downside is. These guys have more skin in the game, they know better, so I'm fine. But they don't bring the claim, so an indirectly injured person brings it. But that's a concept that I'm not familiar with outside of antitrust law, that you can't bring a claim unless you're the best person to bring the claim. They don't mention any negative consequences. Are they worried about someone with an indirect claim, I don't know, filing a suit and binding the others in some way so the people who are directly injured can't proceed? Or maybe the people who are directly, quote, injured actually like the situation so they don't bring the claim? Nothing like that in their opinion? I think there is a portion of the opinion where the Supreme Court and HEC Associate General Contractor says, the fact that we don't have a direct plaintiff here is indicative of the fact that maybe there's no antitrust violation at all. It's like we have, in that case, a union that was suing to recover some kind of damages. And the Supreme Court says there are more direct victims in that case, entities that are letting construction contracts, and are the direct victims of the alleged coercion. It's like the fact that none of them have sued, like in this case, none of the thousands of hospitals that purchased the time product have sued, indicates that there's no violation to deal with in the first place. And we don't want to allow that kind of attenuative and contrived claims in. It's kind of like, if the direct people aren't complaining, then why? I think that's the crux of the argument. I think so. And that was really the basis for sports racing. The court said, look, I've identified an entire cohort of people who are the direct victims of the alleged tying policy. They're the right ones to bring the claim. You, who only purchased the tied product, you're never subject to the coercion, and you only suffer an injury to the extent that these earlier people suffer an injury. And that's true of Parrish as well. Parrish never suffers an injury unless and until thousands of bundled purchasers actually suffer an injury. Counsel, I heard Parrish's argument to be that, well, Abraham, sports racing largely is either dicta or relying upon dicta. But why should we read sports racing so firmly to be sort of the exclusive list of who can have standing to bring the tying claim? In other words, it says there are two types of parties. It doesn't say there are only two types of parties. So help me understand that.  So the entire decision in sports racing on purchaser antitrust tying standing hinges on the notion that there's no other purchaser who could bring that tying claim. The court says of Freeman, the party who actually purchased the bundle in that case, it's like, even though you purchased the tied product indirectly, you purchased it through another party, we're going to carve out an exception to the Illinois BRIC rule on indirect purchasers because we think that you're the right person to bring the claim. You are the right purchaser plaintiff to bring a tying claim. It says of SRS, the party that only purchased the tied product, you are not the right person to bring the claim. You're not tied. You haven't even suffered any antitrust injury that we can tell. And there's another direct victim standing right here. And so the entire decision on doing something, carving out an exception to the Illinois BRIC is no mean thing. The entire decision to do that hinges on the court's conclusion that the tied product purchasers only was not the proper plaintiff to bring a tying claim. Now, when it came to monopolization, the sports racing court said, this is an analytically distinct claim. There are different elements that you have to prove for this claim. The theory of injury is different. The theory of injury in a monopoly maintenance claim like Parrish's is that the monopolist is already charging super competitive prices in the market and then does something exclusionary. At that minute, everybody who purchases the product is injured. And so purchasers of the bundle and a purchaser like Parrish that only purchases the tied product is injured in that moment in time. And so it really maps on to this case quite well. It's kind of the exact same scenario. I would like to take a chance to respond to some of the jurisdictional arguments that Parrish made on Anderson Living Trust and on Microsoft v. Baker. I think that argument boils down to this merger argument that Parrish is making. As I understand it, Parrish says that the order dismissing its separate tying claim merges into the judgment and somehow makes the interlocutory order on its separate class certification claim appealable under Anderson Living Trust and under Baker. And I just don't think that's right. Anderson Living Trust itself addressed a merger issue. The court said of the Anderson Living Trust, it settles its claim and then it voluntarily dismisses the claim. In that opinion, the court says that class certification order, that adverse class certification order, doesn't merge into the final judgment because the Anderson Living Trust disassociated itself from the class. By dismissing its individual residual claim, it divorced itself from the interests of the class such that the adverse class certification order never merges into the final judgment and doesn't become appealable. I think that's the answer here. Parrish dismissed its residual monopolization claim. It dismissed it with prejudice. It said, we let it go. That claim is now gone forever. It divorced itself from the class such that the adverse class certification order doesn't merge into the final judgment and doesn't become appealable. You know, kind of an adverse finding. You can imagine in Microsoft v. Baker, the same issue would have come up. The Supreme Court would have held in that case that the issue was not appealable. Well, under Parrish's logic, that class certification order would have merged into the final judgment and been appealable. And so I don't understand the distinction that Parrish is trying to make there. And I don't think it's cognizable under Anderson Living Trust. Counsel, I think it was either in your motion or one of perhaps your response, though, in implying Microsoft v. Baker. You also argue that Parrish lacks Article III standing, but I read Microsoft v. Baker to be a 1291 finality decision. So why do they lack Article III standing as well? So you're absolutely right, Your Honor. Microsoft v. Baker was the decision that was premised on appellate standing rather than Article III standing. Three justices wrote separately to indicate that they believe that the plaintiff in that case lacked Article III standing. And so I still think that in a case like this where the plaintiff made no reservation of rights below, Parrish made no reservation of rights on its residual claim, unlike the plaintiffs in Microsoft and Anderson Living Trust, I believe, that that plaintiff lacks Article III standing on appeal. It dismissed its claim with prejudice. And the question for Parrish now is, even if it gets a favorable result on appeal, how does it revive that claim at the district court stage, having dismissed it with prejudice? That claim is gone forever. Well, the dismissal is against just the one party who wants to be the class representative. Right. And I think the argument is that it can be continued as a class action. That's absolutely- Which has happened. I think it was a case involving prisoners had a class action, and the purported representative was released from prison, but the case could continue with the other class members. I assume that that's what they're talking about. Maybe that's the case. I didn't see that case in their briefing. There is no other named plaintiff here in this case, though. Parrish is the only named plaintiff. And so there's no one left, really, at the district court stage to prosecute the case. And so without any residual interest in the case at all, it's unclear how Parrish prosecutes the monopolization claim, even if it prevails. I see I'm running low on time, so I did want to briefly address the class certification arguments that we heard. I think it was Tyson that Counsel for Parrish mentioned, and he also mentioned taking merits issue from the jury. I don't think the district court violated Tyson at all. Tyson arose after a jury verdict in that case, and the Supreme Court in that case said, with respect to pure merits issues, when there's a battle of the experts, the court should defer those issues to the jury. It did not say that district courts conducting a Rule 23 analysis, once they make an admissibility determination, they dust their hands and say, I'm done. I adopt wholesale the plaintiff's expert testimony. My hands are tied because I can't make a summary judgment finding on this record. I think if you think about the rigorous analysis that district courts are supposed to perform at the Rule 23 stage, there's really no ambit for that under Mr. Barry's reading of Tyson. The admissibility determination is everything, and then that's it. And so maybe we'll hear from him when he gets back up as to what he thinks the proper role of the district court is under Rule 23, and whether it's only making admissibility determinations and then adopting expert testimony wholesale. So unless the panel has any other questions, I'm happy to answer. Thank you very much for your time. Counsel, you're not entitled to any, but because you came here in this weather, I'm going to give you two minutes. Two minutes. Three. No more than three. I'm going to cut you off at three, literally. I can't get five. No. Thanks. Your Honor, as to that distinction about Tyson's only goes to merits, persuasiveness of experts rather than class, common impact issues, the Supreme Court in Tyson's says, a district court cannot decline certification merely considers a plaintiff's evidence relating to common class actions to be unpersuasive and unlikely to succeed. It's talking about class issues. It's not talking about their contorted reading that it only goes to merits issues at trial. So Tyson's foot on Hyde-Verba applies here. As to the Supreme Court never has said, you need to be the best litigant or the best private enforcer of the antitrust laws. You just need to have the requisite standing in antitrust price injury. Once again, Anderson Living Trust did not have a prejudicial ruling on a major merits decision before it, that a final decision. It was not there. And you can't apply Anderson Living Trust to something that it doesn't address. This court should look to Crowley patrolling. It should look to Schmier. And it should look to the Corley 11th Circuit murder case that we also cite. And I didn't have time to discuss. However, moving on, I wanna address quickly on the class issues. I didn't finish up on typicality. Let me just read for the record where Mirovets' testimony was ignored or discredited by the district court under Tyson's. Typicality, appendix 96-98. Adequacy of representation, appendix 100-103. Predominance 106-112. If you check the record, you'll find that now as to typicality, Dr. Mirovets testified, because more competition produces lower prices, and this is an initial in his reply report, all class members are injured by the PIC overcharging and the court's typicality reasoning does not apply. Also, there are two other issues on error typicality. One, the Court of Appeals in Zeta and Lorazepam, D.C. 4th Circuit, have found standing issues are not relevant to typicality. The court went off on standing and typicality. That's the wrong analysis. Secondly, the district court fundamentally misunderstood this antitrust standing query on the merits, saying Parrish suffered no PIC overcharge injury because it liked the barred PICs. The issue is, is there antitrust price injury? Not whether you liked them or disliked the monopolized product, and I'm out of time. Thank you, Your Honor. Thank you for your consideration. The case is submitted. Counsel are excused.